Eric C. Deters (0038050)

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO
### CIVIL DIVISION

CHRIS CLARK
219 Bassett Street
Cleves, OH 45022

And

KATHY CLARK
219 Bassett Street
Cleves, OH 45022,

        Plaintiffs,

v.

ABUBAKAR ATIQ DURRANI, M.D.,
6905 BURLINGTON PIKE
FLORENCE, KY 41042
(Serve via Certified Mail)

And

CENTER FOR ADVANCED SPINE
TECHNOLOGIES, INC.
6905 BURLINGTON PIKE
FLORENCE, KY 41042

Serve: CT Corporation System
1300 East 9th St. Ste 1010
Cleveland, OH 44114
(Serve via Certified mail)

And

WEST CHESTER HOSPITAL, LLC
7700 UNIVERSITY DRIVE
WEST CHESTER, OH 45069

SERVE: GH&R BUS. SVCS., INC.
511 WALNUT STREET
1900 FIFTH THIRD CENTER

:   Case No.   A1302874

:   Judge

:   **COMPLAINT AND JURY DEMAND**

COPY FILED
CLERK OF COURTS
HAMILTON COUNTY

APR 15 2013

TRACY WINKLER
COMMON PLEAS COURTS

1

**EXHIBIT A**

CINCINNATI, OH 45202                    :
(Serve via Certified mail)              :
                                        :
And                                     :
                                        :
UC HEALTH                               :
SERVE: GH&R BUSINESS SVCS.,             :
INC.                                    :
511 WALNUT STREET                       :
1900 FIFTH THIRD CENTER                 :
CINCINNATI, OH 45202                    :
                                        :
And                                     :
                                        :
JOURNEY LITE OF CINCINNATI,             :
LLC                                     :
10475 READING ROAD, SUITE 115           :
CINCINNATI, OH 45241                    :
                                        :
SERVE: CT CORPORATION                   :
SYSTEM                                  :
1300 EAST NINTH STREET                  :
CLEVELAND, OH 44114                     :
(Serve via Certified mail)              :
                                        :
          Defendants.                   :

---

This lawsuit is being filed at this time based upon credible information Dr Durrani plans to leave the country at the end of April. Based upon the volume of claims we have against Dr Durrani we in good faith know this case has merit. A full review and affidavit of merit will follow. Filing of this complaint and obtaining service was of the utmost importance to avoid an out of country or fleeing issue.

## PARTIES, JURISDICTION AND VENUE

1. The incidents giving rise to this action and the subject matter of the Complaint arise out of medical treatment, acts and omissions, and conduct that occurred in Butler County, Ohio.

2

2. At all times relevant, Plaintiff Chris Clark ("Plaintiff") was an individual resident and citizen of Cleves, Ohio.

3. At all times relevant, Plaintiff Kathy Clark was an individual resident and citizen of Cleves, Ohio, and was married to Chris Clark ("Plaintiffs").

4. At all times relevant, Defendant Abubakar Atiq Durrani, M. D. ("Dr. Durrani") was licensed to and did in fact practice medicine in the States of Ohio and Kentucky.

5. At all times relevant, Center for Advanced Spine Technologies, Inc. ("CAST"), was licensed to and did in fact perform medical services in the State of Ohio and the Commonwealth of Kentucky, and was and is a corporation authorized to transact business in the both states.

6. At all time relevant, West Chester Hospital ("West Chester"), registered at the time of the incident as West Chester Medical Center, was a corporation authorized to transact business and perform medical services in the State of Ohio.

7. At all times relevant, UC Health, Inc. ("UC Helath")was a corporation authorized to transact business and manage medical services in the State of Ohio.

8. At all times relevant, Journey Lite of Cincinnati, LLC ("Journey Lite") was a Delaware corporation transacting business and performing and managing medical services in the State of Ohio.

9. The amount in controversy exceeds the jurisdictional threshold of this Court.

10. Plaintiff reserves the right to file an Amended Complaint as this Complaint is being filed, inter alia, to preserve all applicable statutes of limitation, and remedies under law.

3

## BACKGROUND

11. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

12. Plaintiff's family doctor referred the Plaintiff to Dr. Durrani for lower back pain.

13. On November 1, 2012 Plaintiff saw Dr. Durrani at CAST.

14. While at CAST, Durrani told Plaintiff he needed emergent spine surgery right away.

15. No conservative treatment options were offered to the Plaintiff.

16. On December 7, 2012 Dr. Durrani performed surgery on at Journey Lite on Plaintiff's lumbar spine at L4-L5.

17. During the first surgery, Defendants experimentally used BMP-2/Infuse, and/or other bone graft, without Plaintiff's consent or knowledge.

18. Defendants did not obtain Plaintiff's consent to use BMP-2/Infuse in her cervical spine surgery prior to the first surgery.

19. Defendants used Medtronic Infuse/BMP-2 on Plaintiff during the surgery without her informed consent.

20. Defendants did not disclose their intent to use BMP-2/Infuse in the surgery, and further, did not disclose the intent to use BMP-2/Infuse in a way not approved by the FDA.

21. BMP-2 is manufactured, marketed, sold and distributed under the trade name "Infuse" by Medtronic.

22. Dr. Durrani is a consultant for Medtronic.

23. Defendants did not inform Plaintiffs of Durrani's financial interest, conflicts of interest or consulting arrangement with Medtronic.

24. For use in spinal surgery, BMP-2/Infuse is approved by the FDA for a limited procedure, performed on a limited area of the spine, using specific components. Specifically, the

4

FDA approved Infuse for one procedure of the spine: Anterior Lumbar Interbody Fusion ("Anterior" approach); and only in one area of the spine: L4 to S1; and only when used in conjunction with FDA-Approved Components: LT-CAGE Lumbar Tapered Fusion Device Component ("LT-CAGE")

25. Use of BMP-2/Infuse in cervical or thoracic surgery, or use through the back (posterior), or side (lateral), or on areas of the spine outside of the L4-S1 region (e.g., the cervical spine), or using components other than or in addition to the LT-CAGE is not approved by the FDA, and thus such procedures and/or use of non-FDA approved componentry is termed "off-label."

26. When used off-label, BMP-2/Infuse frequently causes excessive or uncontrolled (also referred to as "ectopic" or "exuberant") bone growth on or around the spinal cord. When nerves are compressed by such excessive bone growth, a patient can experience, among other adverse events, intractable pain, paralysis, spasms, and cramps in limbs.

27. The product packaging for BMP-2/Infuse indicates it causes an increased risk of cancer four (4) times greater than other bone graft alternatives.

28. In July 2008, prior to the Plaintiff's first surgery, the FDA specifically warned medical providers _not_ to use Infuse/BMP-2 in the cervical spine.

29. During the first surgery, Defendants also did not use the LT-CAGE.

30. Defendants did not obtain Plaintiff's informed consent to use BMP-2/Infuse "off label" in his lumbar spine surgery.

31. Defendants improperly used BMP-2/Infuse on Plaintiff, causing harm.

32. Durrani promised that Plaintiff would experience immediate pain relief following his surgery. Instead, his pain has been far worse and more extreme since the surgery.

5

33. Plaintiff was misled by Defendants concerning the extent, nature and duration of the surgery that was to be performed.

34. Upon information and belief, the first surgery was medically unnecessary.

35. At all times relevant, Defendants were in exclusive control of amount and ratio of BMP-2/Infuse bone graft that experimentally implanted into Plaintiff.

36. During the first surgery, Plaintiff developed an infection while under the care of Defendants.

37. After the first surgery, Plaintiff began to experience extreme pain, and fluid leaking from his back.

38. Staff at CAST refused to schedule an appointment for Plaintiff.

39. Plaintiff was forced to seek medical treatment at the Emergency Room twice after the first surgery.

40. Plaintiff was experiencing severe nerve pain down his left leg and severe headaches.

41. Plaintiff called CAST and CAST employees and nurses told Plaintiff he had a migraine and to take Excedrin.

42. After two ER visits, Plaintiff was still experiencing pain and finally saw Dr. Shanti at CAST because Dr. Durrani was out of the country.

43. Plaintiff had another MRI and Dr. Shanti discovered "bone fragments" from first surgery causing spinal fluid leaking in two areas.

44. Dr. Shanti admitted Plaintiff into West Chester Hospital to remove the fragments and clean up Durrani's mess.

45. On February 1, 2013, Dr. Shanti performed emergency surgery on Plaintiff at West Chester Hospital and applied floseal glue to stop the wound leakage.

6

46. Because of the first surgery performed by Defendants, and the second revision surgery, the Plaintiff has been unable to work, and participate in family functions.

47. Plaintiffs medical condition as a result of the Defendants conduct was extreme and horrible, but Durrani continued to falsely document at CAST progress notes that Plaintiff was improving.

48. But for Defendants conduct and negligence regarding the surgery, the Plaintiff's ongoing and future pain management and treatment would have not been medically necessary.

49. Defendants never explained to the Plaintiffs that the surgery would be an experiment.

50. The billing and administration of insurance precertification related to the surgery was performed, inter alia, by Defendants CAST, Journey Lite, West Chester Hospital and UC Health.

51. Defendants fraudulently induced Plaintiff and his health insurer(s) to undergo and pay for the surgery.

52. Plaintiff is now permanently disfigured, harmed, immobile, and in constant pain.

53. Plaintiffs condition is embarrassing and emotionally draining, and constantly painful.

54. Subsequent to and as a direct and proximate result of the experimental surgery by Defendants, Plaintiff is now permanently and totally disabled, disfigured, and immobile.

55. As a direct and proximate result of the conduct of the Defendants, Plaintiffs earning potential has been destroyed.

56. As a direct and proximate result of the conduct of the Defendants, Plaintiff will continue to suffer permanent pain in the future.

57. As a direct and proximate result of the conduct of the Defendants, Plaintiffs now suffer depression and permanent psychological impairment.

7

58. As a direct and proximate result of the conduct of the Defendants, Plaintiffs now suffer a loss of marital consortium.

59. Plaintiff is currently missing work, and continues suffering to this day from severe pain from the wound site, and radiating pain in his extremities.

## COUNT I: NEGLIGENCE – DOCTOR DURRANI, CAST & JOURNEY LITE

60. Plaintiff incorporates by reference each and every allegation in the paragraphs above.

61. Defendants owed Plaintiff Chris Clark, the duty to exercise the degree of skill, care, and diligence of an ordinary prudent health care provider would have exercised under like or similar circumstances.

62. Defendants breached his duty causing damages by failing to exercise the requisite degree of skill, care and diligence that an ordinary prudent health care provider would have exercised under same or similar circumstances through, among other things, the negligent surgery, improper diagnosis, medical mismanagement and mistreatment Chris Clark, including but not limited to unnecessary surgery, failed surgery, improper performance of surgery, and improper follow up care addressing the patient's concerns.

63. As a direct and proximate result of the aforementioned acts and omissions by the Defendants, Plaintiff Chris Clark sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT II: NEGLIGENCE - WEST CHESTER HOSPITAL & UC HEALTH

64. Plaintiff incorporates by reference each and every allegation in the paragraphs above

8

65. Defendants owed their patient, Chris Clark, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

66. Defendants breached that duty by failing to exercise the requisite degree of skill, care, and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, its negligent medical mismanagement, negligent diagnosis and mistreatment of Plaintiff.

67. As a direct and proximate result of the aforementioned acts and omissions by the Defendants, Plaintiff sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT III: VICARIOUS LIABLITY - JOURNEY LITE, CAST, WEST CHESTER HOSPITAL & UC HEALTH

68. Plaintiff incorporates by reference each and every allegation in the paragraphs above.

69. At all times relevant, Defendant Dr. Durrani was a staff physician, agent, and/or employee of CAST and/or West Chester Hospital, which is owned and/or managed by UC Health.

70. Upon information and belief, Drs. Durrani is a shareholder, owner, director and/or member manager of CAST and West Chester Hospital, and therefore has a direct financial motive and interest in CAST, West Chester Hospital and/or UC Health profits.

9

71. Defendant Durrani was performing within the scope of employment, agency relationship, and/or for the financial gain of the Defendant when dealing with the Plaintiff.

72. Defendants are responsible for harm caused by acts of employees, agents and owners which conduct occurred within the scope of employment under the theory of respondeat superior, ostensible agency, and/or vicarious liability.

73. Defendants are liable for the negligent acts and omissions of Defendants Durrani alleged in this Complaint.

74. As a direct and proximate result of these Defendants acts and omissions by and through its agents and/or employees, Plaintiff sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT IV: NEGLIGENT HIRING, RETENTION, CREDENTIALING & SUPERVISION - JOURNEY LITE, CAST, WEST CHESTER HOSPITAL & UC HEALTH

75. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

76. Defendants were responsible for the hiring, credentialing, screening, oversight, and conduct of its residents, doctors, nurses and those doctors with privileges at the Hospital.

77. Defendants were in a unique position to control, monitor, and oversee the conduct and consequences of the residents, doctors, nurses and those with privileges, and owed a duty to Plaintiff to exercise said control.

78. Defendants provided Dr. Durrani inter alia, financial support, control, medical facilities, billing and insurance payment support, staff support, medicines, and tangible items for use on patients.

10

79. Defendants knew, or had reason to know, that Dr. Durrani had his privileges terminated and/or refused at Christ Hospital, Children's Hospital, Good Samaritan Hospital, Deaconess Hospital, and/or St. Elizabeth Hospitals prior to West Chester Hospital and UC Health providing Dr. Durrani privileges at the facility.

80. West Chester Hospital and UC Health currently continue to permit Dr. Durrani to admit patients, and to perform surgery at West Chester Hospital.

81. CAST continues to employ Dr. Durrani.

82. Defendants breached their duty to Plaintiff, inter alia, by not controlling the actions of the Dr. Durrani and doctors, nurses, staff, and those with privileges, during the medical treatment of Chris Clark at CAST and West Chester Hospital.

83. As a direct and proximate result of the acts and omissions described herein, including but not limited to failure to properly supervise medical treatment by the residents, doctors, nurses, and those with privileges by West Chester Hospital and/or UC Health, Plaintiff sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT V: BATTERY - DEFENDANTS DURRANI

84. Plaintiffs incorporate, adopt and allege as if fully restated herein, those allegations contained in the above paragraphs.

85. Defendant Durrani committed battery against the Plaintiff Chris Clark by performing a surgery that was unnecessary, contraindicated for Plaintiff's medical condition, grossly sloppy, negligent, reckless, and for which he did not properly obtain informed consent, inter alia, by the failure to provide information to Plaintiff.

11

86. Plaintiff would not have agreed to the surgeries if he knew that the surgeries were unnecessary, not medically indicated, and would be performed in a reckless, sloppy, and aberrant way.

87. As a direct and proximate result of the aforementioned battery by Defendant, Plaintiff was caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, the loss of ability to perform usual and customary activities and Plaintiff have incurred and will continue to incur substantial medical expenses and treatment.

## COUNT VI: FRAUD - DURRANI, JOURNEY LITE, CAST, WEST CHESTER HOSPITAL & UC HEALTH

88. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

89. Defendants made material, false representations to Plaintiff and to Plaintiff's insurance company, Cigna Corporation, related to Chris Clark's care and treatment, as outlined in this Complaint.

90. Such false representations include, inter alia, stating that the surgery was necessary; that Dr. Durrani "could fix" Chris Clark; that further conservative treatment was unnecessary and futile; that the surgeries would be simple and "minimally invasive"; that the procedures and surgery billing to the insurance company was accurate and medically indicated; that the surgery was successful; that Chris Clark was medically stable and ready to be discharged.

91. Defendants knew or should have known such representations were false, and/or made the misrepresentations with such utter disregard and recklessness as to whether they were true or false that knowledge of their falsity may be inferred.

12

92. Defendants made the misrepresentations both before and after the surgeries with the intent of misleading Plaintiff and third parties into relying upon them.

93. Plaintiff and the insurers justifiably relied upon the material misrepresentations of Defendants when making the decision to undergo and pay for the surgeries.

94. As a direct and proximate result of the aforementioned, Plaintiff Chris Clark did undergo multiple surgeries which were paid for in whole or in part by Plaintiff's commercial insurance, in addition to Plaintiff's out of pocket expenses, and sustained grievous injuries, paralysis, new and different pain, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and Plaintiff has incurred and will continue to incur substantial medical expenses and treatment.

**COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

95. Plaintiffs incorporate adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

96. Defendants intended to, and in fact, caused emotional distress to the Plaintiff.

97. Defendants' conduct was so extreme and outrageous as to go beyond the bounds of decency and was such that the conduct can be considered utterly intolerable in a civilized society.

98. Defendant's conduct was the proximate and actual cause of the Plaintiff's psychiatric and emotional injuries, mental anguish, suffering, and distress.

99. The distress and anguish suffered by the Plaintiff is so serious and of a nature no reasonable man or woman could be expected to endure.

## COUNT VIII- SPOLIATION OF MEDICAL RECORDS EVIDENCE

100. Defendants willfully altered, destroyed, delayed, hid, modified, and/or spoiled ["spoiled"] Plaintiff's medical records, billing records, insurance paperwork, consent forms, and related evidence.

101. Defendants spoiled evidence with knowledge that there was pending or probable litigation involving the Plaintiff.

102. Defendants' conduct was designed to disrupt Plaintiff's potential and/or actual case, and did in fact, and proximately cause disruption, damages, and harm to Plaintiff.

## COUNT IX- LOSS OF CONSORTIUM & MEDICAL EXPENSES

103. Plaintiffs incorporate by reference each and every allegation contained paragraphs above.

104. At all times relevant, Plaintiffs Chris Clark and Kathy Clark were married.

105. That as a result of the wrongful acts and omissions of the Defendants, Plaintiffs Chris Clark and Kathy Clark were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, loss of affection, loss of assistance, and loss of conjugal fellowship, all to the detriment of Plaintiffs' marital relationship.

106. That all the aforesaid injuries and damages were caused solely and proximately by the acts and omissions of the Defendants.

## COUNT X – NEGLIGENCE PER SE

107. Plaintiff incorporates, adopts and re-alleges as if fully restated herein, those allegations contained in the above paragraphs.

108. Defendants are liable for the results of violating statutes that apply to them.

14

109.    Defendants are obligated and have a duty to obey Section 361 of the Public

Health Service Act, codified at 42 U.S.C. § 264 [the "PHS Act"] and the Federal Food,

Drug, and Cosmetic Act, 21 U.S.C. § 321 (g), and other applicable statutes.

110.    Defendants violated these statutes, causing harm to Plaintiffs.

111.    As a direct and proximate result of the statutory violations as described in this

Complaint, Plaintiff sustained grievous injuries, new and different pain, prolonged pain

and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and

loss of ability to perform usual and customary activities and Plaintiff has incurred and

will continue to incur substantial medical expenses and treatment.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against Defendants on all claims.  Plaintiff

further requests:

1.    Past medical bills;

2.    Future medical bills;

3.    Lost income and benefits;

4.    Lost future income and benefits;

5.    Loss of ability to earn income;

6.    Past pain and suffering;

7.    Future pain and suffering;

8.    Plaintiff seeks a finding that their injuries are catastrophic under Ohio Rev. Code
     §2315.18;

9.    All incidental costs and expenses incurred as a result of their injuries;

10.    The damages to her credit as a result of their injuries;

11.    Loss of consortium;

12.    Punitive damages and adverse jury instructions;

13.    Costs;

14.    Attorneys' fees;

15. Interest;

16. All property loss;

17. All other relief to which she is entitled to.

Based upon this itemizations of damages, the damages sought exceed the minimal jurisdictional amount of this court.

Respectfully submitted,

_____
**Eric C. Deters (38050)**
**ERIC. C. DETERS & PARTNERS, PSC**
**5247 Madison Pike**
**Independence, KY 41051**
**Phone: (859) 363-1900**
**Fax: (859) 363-1444**
**eric@ericdeters.com**

**JURY DEMAND**

Plaintiff hereby respectfully request trial by jury on all issues.

_____
Eric C. Deters (0038050)

16